May we be seated and call the next case. 3-14-0592 Enraged Marriage of Tammy Schlei Filed by Liz Sutson and Mark Schlei Filed by Emily Currier Ms. Sutson, you may approach and proceed. May it please the court. Counsel, my name is Leah Sutson and I represent the appellant, Tammy Schlei. This afternoon we're asking that your honors find that the trial court erred as a matter of law in three respects. The first issue is that the trial court failed to include Mark Schlei's restricted stock units as income for child support purposes upon the vesting of the stock. The second issue and point in which the trial court erred is denying Tammy's request to have the child support award retroactive to a date in a Michigan order retroactive to February 10, 2012. And finally we ask that you find that the trial court abused its discretion in ordering Tammy to be 100% responsible for the children's medical expenses. With regard to the first issue, the issue of Mark's restricted stock units, really what we're asking the court to consider is when is stock considered income for child support purposes. And as a preface to that I want to point out that I don't think the facts are really in dispute in counsel's response brief and we also did an agreed motion to supplement facts. The facts really aren't in dispute in terms of the stock. The issue is whether as a matter of law Mark's restricted stock units are income under the statute. So of course the first thing that needs to be done is we need to look at the plain language of Section 505 of the Illinois Marriage and Dissolution of Marriage Act, which defines net income as total of all income from all sources minus statutory deductions. Now the Supreme Court case in remerit of Rogers gives the hallmarks of the definition of income and under Rogers income is defined as something that comes as an increment or addition, again a recurrent benefit that is usually measured in money, the value of goods and services received by an individual in a given period of time. Income is something that enhances wealth and money, excuse me, income is money or other form of payment that one receives, usually periodically from employment, business, or investments. So if income enhances wealth, then wealth is a separate concept from income. Income creates wealth. No, I thought you said it enhances wealth. It enhances wealth and by necessity income creates wealth, part and parcel. And there are many cases, both parties cited many cases that address whether or not very specific types of things can be considered income for child support purposes, and I don't know that I'll have time to get to all of them, but I think certainly there are some that are directly on point. I would like you to tell me about the various restrictions or non-restrictions of the statute. Under what circumstances does it vest, that's the right word, income? Well, sorry Judge. Please. First I want to point out that after the briefs were filed, Mark was terminated from his employment, so they are vested as of now. So at this point, the circumstances under which they vest are really, well they're moot in effect because he doesn't work there any longer. What does vesting mean? Vesting means he has the right to cash them out. Oh, so he has the right to liquidate. He has the right to liquidate them, exactly. Okay, so there's no question about time to do it or whatever? Not at this juncture. He has the right to call up a broker and say so. That is my understanding. Can we go back and clarify when they were, when he was able to do that during his employment period and when, what were those stocks and what weren't? Okay, so when Mr. And you say now they're all vested. Now they're all vested. But their income at different points in time. Well, when Mr. Schley accepted his employment, he had an employment agreement. And that employment agreement set forth, he got a certain number of shares of stock when he accepted the employment. Before the trial, he got another set of shares of stock, the restricted stock units. They vested after a certain period of time. The company had to meet certain performance criteria. As long as they did it within a specified period of time, the stock would vest. He also, there was another limitation as to whether or not he had to maintain a certain equivalent dollar amount of the restricted stock because he was an executive of the company. And so for our appeal, even before Mr. Schley was terminated, we're really only asking the court to find that when the stock vests, it be considered income for child support purposes. And that's where the W-2 is issued? Yes. Upon vesting? Yes. Well, it's either W-2 or 1099. It's a report that that is considered, at least under IRS rules and regs, that it's income. Correct. Right. Exactly. And so our position and where we believe the trial court can follow is that there is no exception under 505A3 to not include this as income because it is a benefit. It enhances his wealth. It's a financial gain. He has sole control and authority to determine whether. Did the judge actually say it wasn't income? I mean, it's kind of confusing. I mean, he's giving all rulings from the bench. Yes. And then you're to write them off. And then he's signed. Okay? Yes. Okay. And so we're trying to read what he says, okay? What is he really saying? I mean, I don't know. Did you write it up before you met him? Well, and as full disclosure, I wasn't the actual attorney who did the trial, but I did read the record, and there was a moral ruling, and I think there was some confusion between the two attorneys and perhaps the court as well as to what were the circumstances, the actual circumstances under which that stock would be considered income for child support purposes. Both parties proposed the language, and the trial court accepted Mr. Schley's attorney's proposal in terms of the language. And so as it stands, the order, I believe, says when he cashes out the stock, that's when it would be considered income. Which sounds like what he said on the transcript, right? Well, I would hope that he would be consistent. So your view is the trial court says when he cashes it out. Your view is when he can cash it out. Absolutely. Okay, pretty simple. Absolutely. Just to my question, when he received the stock, was he able to do that? Or was it restricted? Was he unable to? When he received it, he was unable to cash it out because it hadn't yet vested. And what requirements had to be met? The company had to meet certain performance measurements that were set forth in the compensation agreement. Annual measurements. I believe it had to have been within a period of time. I can't remember the exact details. But because he had just started that job about a year right before the trial, it hadn't vested. None of the stock had vested. But now it's all vested. Well, what he has now is vested. I think he lost some of the stock as part of this termination. But what he has is vested. He has only vested stock at this point. So if you're looking for a black letter law type rule, you say, okay, as far as restricted stock is concerned, it should be treated as income when the stock can be converted into when it can be liquidated? Or are you saying under federal regs, IRS code, that it's treated as taxable income? Well, I think those are one and the same. And so I think that would be a very safe bright line rule. I think there's other cases out there that would even support finding the stock upon its receipt is subject to income for child support purposes. And if I may just reference my notes to get the exact case name. Yes, there are. I will accept that. There are cases out there that take the view that just because it has been allocated to you but you can't liquidate it, we should treat it as income. Correct. Because it's still a financial gain. And the other part of it is what is income? But the other part of the argument is the court improperly added a deduction that's not set forth in Section 505A3. There are specified deductions, things that are excluded for child support purposes. And to add this one is a judicial amendment of the statute that's not permitted. And that's exactly what the court found in Colangelo. The deduction being? Well, in Colangelo the deduction in this case being that the stock had to be actually cashed out before it could be considered income. Cashed out. Cashed out. He had to actually liquidate it as opposed to having the right to liquidate it. Correct. Now I just want to spend a few minutes going over the second issue if there are no other questions on the issue of stock. The other issue is equally important, and it's a certainly important financial issue for my client, in terms of the retroactivity of the court's child support amount that was awarded January 2014. And I need to give you a little bit of a background so you can appreciate the procedural history of this case. The parties were divorced in Michigan. Mr. Schlight lost his job and filed a motion in February of 2012 to terminate his child support. At approximately the same time, my client filed her own motion to enforce the standing child support order. Was that a temporary order? Yes. And in the order, there was an order entered April 11th. In Michigan? Correct. Because the referee hadn't really made a decision? Exactly. And the order is specified as an interim amount. The order set an interim amount of child support in the amount of $1,572, and that order made it very clear that any arrearage or overpayment would be paid within 30 days of the final order. So the order itself is very clear it's not a final order. And then the order further states that all modifications to child support are retroactive to February 10th, 2012, the date that Mr. Schlight filed his motion. Well, come October 2012, there's an issue of neither party living in Michigan, so the Michigan court says that they no longer have jurisdiction, that the case should go to Colorado. Mr. Schlight does not file anything in Colorado. My client files something in Colorado. And what she labeled her motion was a petition to modify child support. She filed that in early 2013. Colorado found that it lacked jurisdiction. And so a couple months later, I believe in April 2013, is when my client filed her motion that's a subject of, well, I don't know if it's really the subject of this. She filed a motion in Illinois, which now Illinois has jurisdiction over the case, and she labeled it a petition to modify child support. But the problem is Mr. Schlight's motion to terminate child support was denied by that April 2012 Michigan order. So the only motion pending was Tammy's motion to enforce the child support order, with no final order resolving that motion. So when the case was enrolled in Illinois, she had filed a petition to modify child support, but her original petition is still pending. So this is really an issue not of modification. It doesn't fall within Section 510, because there was never a final order that she's modifying, that she's seeking to modify. Really what she's seeking to do is finalize the proceedings that were started in 2012. We cite to the U.S. Uniform Interstate Family Support Act, for the proposition that the Michigan order, the Michigan case was registered in Illinois, and therefore the Illinois court was required to follow the Michigan order that was properly registered here. There was never a dispute that the order wasn't properly registered here. And so our position is that the trial court was obligated to follow that interim order that had never been finally resolved, that said that all child support re-urges would be retroactive to February 10, 2012. The trial court failed to do that. The trial court said that child support, which did increase, would be effective as of January 21, 2014, the day that the court issued its ruling. And so, as a matter of law, it is our position that the court erred in refusing to make the support retroactive. And again, it's really not the label that we put on the petition for modification of child support, it's the substance of what our client was requesting. What she was requesting went back to the original petition that was filed in Michigan that was finally resolved in January 2014, when the court finally ruled on what the child support obligation should be. Now, I mentioned Colangelo, and Colangelo is really the case that is directly in point. It's already been decided, not by this district, but by the first district in 2005. Excuse me, the second district, if I said the first, I misspoke. The second district has already determined that stock is income for child support purposes, and it doesn't otherwise fall within one of the exceptions under 505A3. So that issue has been already addressed. Now, the Colangelo court doesn't make any mention of a requirement of the stock to have been cashed out in that case. And a more recent decision is the first district case in 2014 in remarriage of Pratt. And in that case, the parties had a marital settlement agreement in which they agreed not to include the husband's stock and stock options as income for child support purposes. The first district found that that agreement was contrary to public policy, that they couldn't make such an agreement, and that the trial court, and this goes to the Colangelo issue of marital property as being also income for child support purposes, but they affirmed that proposition, and it's even if the income comes from vested stock options awarded as marital property. In this case, and I just want to point out really quickly, that stock options are even more tenuous than stock awards or stock units, because an option is a right to exercise. An award is something that was actually granted, which was the case in this case. He got those stock units, the restricted stock units, when he accepted the employment, and then he was granted a certain number after a period of time. The issue here is only the vesting, but even in other cases, they've even found that stock options can be considered income for child support purposes. Then why don't we consider the portfolio's income? Not the dividends, but the underlying equity in the portfolio. Well, frankly, I think you can. I think there's case law to that. I think certainly the savings... Then why don't we consider the car that's awarded as income in a property division? Well, because... It's an asset that can be sold. But then the difference is that Mr. Schley, as part of his compensation, received these stock units. In addition, he had his salary, he had his bonus, and then he got the stock units, also part of his compensation. So that's the distinguishing factor between a share of stock that's divided or allocated in a property division as opposed to stock given pursuant to employment. Potentially. Okay. Well, there has to be some conceptual clarity here. Right. Repeats fakes. Well, absolutely. And I agree, and that's why it's very clear that divesting is a clear line, as Your Honor said. Thank you. Ms. Herrera? Thank you. May it please the court, counsel. My name is Emily Herrera from the law firm of Sullivan, Taylor & Gouman. I represent the Appalachian Mark Schley. I think counsel's correct. I think the biggest issue before Your Honor this morning is what do we consider as income for child support purposes? And I think it's important to note that there is no case in Illinois that deals with restricted stock units as income for child support purposes. The only thing where you get close to restricted stock is in the marriage of Pratt. And in that case, we're dealing with restricted stock, not restricted stock units. Restricted stock, it's a fine line distinction. Restricted stock are actual certificates that are given to the employee, but they have to wait until they vest to a certain point. With restricted stock, you get dividends on those, and they're treated as stock. You have voting rights. Restricted stock units, which Mr. Schley has, was the idea of stock, that if you meet certain vesting requirements, then you will get these stock certificates, and then they will be yours. I think there's three terms that are really important to understand when you're looking at restricted stock units as well as restricted stock, and they are granted, vested, and distributed. The facts are clear. Mr. Schley was granted certain stock upon his employment, and then a year after his employment. Certain stock vested when he left the company, when he was fired. He has not sought a distribution of those incomes. Now, with respect to Emory, the marriage of Pratt. Did you say those incomes? Excuse me? Incomes. Distribution of those incomes. I apologize. He has not received distribution of the stock. I thought you were... He has not requested it. He has not requested it, and he has not received it. What's the difference between that and deferred compensation, where I take money out of my paycheck and have it put away, and just because I say I don't want it, how is that any different? Well, deferred compensation is considered income for child support purposes. That's considered as your base income. So instead of saying my income would maybe be $100,000 because I have deferred compensation, you want to say that the income is $80,000 when child support is calculated on the $100,000. This is something completely separate. It's above and beyond his base compensation, and it is a... So it's more like a bonus? Not necessarily. In effect, a bonus, because a bonus, you receive cash in hand. The restricted stock unit is not cash in hand, so it's not a tangible asset that he can actually use as for income. But if it is not, he could give... It would be no different than a cash in check. You could cash that, and he would have cash in hand. They are vested, and the taxes have been paid, so yes, he could cash them in, but I think you need to look at that similar to as a person who has, say, stock in Apple, and Apple stock increases substantially. Can the court now force that individual to cash in the stock because it's now increased in value? That's a question of conceptual clarity. That's treated as a property distribution. Isn't it allocation? I mean, if somebody has Apple stock, and they're involved in a dissolution, it's either classified as marital or non-marital. It's considered a piece of property, which is either split or allocated to one party or the other, and credit is given, offset, is given to the other party in at least an equitable division process. That's correct, but if the individual now... Now the stock has increased, so we know that there could be a gain to this individual's income. When he cashes that out, that now becomes income for child support, much similar to the case that Your Honor Witt wrote the opinion on, which was in the marriage of Anderson and Murphy. In this case, we're not dealing with... He doesn't have a direct benefit. The income isn't in his hands. He... Counsel's talking about the time when the stock vest that initially triggers a taxable event. That's an event he has no control over. He has no control whether the taxing event happens and, in fact, it's a... It's similar to the reverse stock split, is that it's involuntary. So I think you can look at it as there's almost a combination of in the marriage of Anderson as well as Pratt. So you have a situation where the stock vest, and he has to cash the... There are shares of stock that are forfeited to pay that tax obligation. If he decides to keep that stock, not cash it in, when he cashes it in again, he now has capital gains tax. So I... But if we were to say that when it vests and it's attributed to him as taxable income, the value and the amount is at that point as a source of income for him, isn't it? I think it's... There's no gain or anything. I mean, it says there on the 1099, whatever the stock is and the value, and that's what you owe income tax on. But the problem with that is in the marriage of Baumgarten said that the Illinois Marriage and Dissolution Marriage Act, not the tax code, defines what income is for child support purposes. And that leads you back to in the marriage of Rogers, which defined income as the plain and ordinary meaning which is a gain to somebody. And that stock is not a gain to him. He does not have the money in hand until he takes a distribution of that account. And I think all the cases that have... Are those both Supreme Court cases? In the marriage of Rogers is a Supreme Court case. And in fact, it referenced in the marriage of Baumgarten, which is an appellate case. But it did reference that the IMDMA determines income, not the tax code. What about now? Assuming it all vests now, would this be income to him in 2015? The money that is for the stock. If the tax has been paid, if it vested today in 2015, he is required to pay tax on the vested stock. But that doesn't... That's not my question. When it does vest, assuming it vested when he was chairman, whenever he requests, does that become income to him this year? Under the federal tax code. Right. Under the federal tax code, it does. What about child support? It does not. Why? Because of the cases that have dealt with stock, such as stock options, like in Colangelo, and if we look at Pratt, all of those determine child support when the stock was actually cashed in. So the stock is not cashed in. It only has been used... It was involuntarily forfeited for tax purposes. So when he does take a distribution and has the cash in hand, then it's considered child support purposes and he has a child support obligation. And so we don't care about gain or anything like that at that point? Well, the stock will have a gain. Well, and we don't care about it. Before you start to talk about capital gains and all of this, it really comes down to this. Is that... Do we say the right to cash it in, or do we say when he decides to cash it in? Which is income? When? Under your view. I think it's income when it's actually cashed in. When he decides to cash it in. When it's decided. Because you look at child support, it's when... For income, it's when the money is actually received, then it's qualified as income. And that was in the marriage of Shores. So there's no such thing as imputed income. That's a different animal in and of itself because imputed income deals with a situation where you don't necessarily know what their income is. So you impute a certain income to them. So under your theory, he could wait until the last child was 18 or out of college or whatever the situation was, cash his money in, but not the income. So then he wouldn't know any child support. He could do that. But I think you need to look at a situation where if you have a gentleman, let's say a father, a hypothetical situation, a father who is 60 years old and his employer contributes to a 401K. Do we then say because he could tap into his 401K account during the time that he might have minor children that he's now required to do that even though he might not take the benefits until the children are past the age of 18? I don't think that as a court you can force someone to cash in assets for child support purposes. There are rules about IRAs. I mean, you know, when you can take them out or you have to pay penalties. That's correct. None of that applies here, does it? It does not. It does not. But there are no cases that deal with restricted stock units and when they do that, so we have to look to other jurisdictions or other courts on how they look at income. And all of the courts who have looked at what income is, it's always when the money is available to be used. It's not when they're... When I asked you earlier about deferred comp, you said, oh, no, that is something that you're willingly putting away but the entire package is considered as income for child support. But what you're saying because of the nature of the instrument of ownership that this is different because if you can cash that stock in without penalty and it is cashed to you as part of your package of employment, how is that any different? Why should we wait for stock but not for deferred compensation? Why is there a difference here? I think the difference is very... It's not a very bright line between the two. I think what it is with the stock, it's more of a property. You have an asset. The deferred compensation, that's an element of your salary or income. So this is actually an item of property instead of what would be your income. We've addressed that when somebody gets a company car or we use a portion of that. We say that's income to you for child support purposes. You're receiving this in lieu of a greater salary. So isn't this just the same thing? I don't think so because I think your look, it's an issue of... With respect to the company car, that's what's considered income is that the employees may be given additional monetary income to have that car instead of driving his own car. That's monetary. He's given money to do that. Here with the stock, they're not cashed in yet. So they have not become wealth or in addition to his income as Rogers has provided. I think what you need to look at though is not the... It's when the income is actually received not when it's awarded. And I think that relates to if you look at Pratt, which counsel cited to as well as Colangelo. Colangelo, that one, he actually received a distribution of the stock. So that income was available. Pratt, it was a restricted stock case. So the individual received dividends and that was considered income. And in that case also, the restricted stock was liquidated and it was a cash value and then the court determined that child support should be used on those. So all of these cases that deal with the stock in general, it's when the stock is actually liquidated or distributed, that's when it's considered income. And in fact, and I think of in rhythm in Anderson and Murphy, the court even said, you know, if this was a sale of stock for an employment-based situation, then it would be considered income. And that's what we have here. Once the stock is sold, then it's subject to child support purposes. Well, you could be a lot of chicanery involved if you had a small corporation and you were contemplating divorcing child support, changing the compensation package to a very low cash salary and structuring your corporation to receive shares of ownership under a restricted stock basis, right? You could just drive your income down. I guess in certain circumstances, you might, but it did not in this circumstance. No, I'm just saying you could create opportunities, you know, a financial plan if that indeed is the case. But then I think the court would have the ability to be able to impute income to that individual. If they think that there's more of a property end of their compensation compared to income, then I think the court there has discretion to impute or determine a certain amount of income. Counsel, two minutes. Just briefly to touch on Ms. Schley's argument with respect to the retroactivity of the support. I think counsel did go into the timeline, but it's extremely important to think about what the petition actually said. And for clarification, I'll call the April 2012 order, the 2012 Michigan order. And what that said was that the modification of child support for that interim amount was retroactive to February 10, 2012. Now, after that point, Tammy filed what's called a motion to rescind the order. And the court denied that and said Michigan said you need to take this matter to Colorado where there's jurisdiction because that's where you currently reside. So in Colorado, what Tammy did on January 24, 2013 is she filed a motion to increase child support. At no point did she even reference the 2012 Michigan order. On February 15, 2013, Colorado dismissed her petition with prejudice because she improperly tried to enroll the support judgment. So that's when she came to Will County on March 28, 2013 and that's when she filed her petition to enroll the Michigan judgment as well as her motion to modify child support. Why did they rule it was an improper attempt to enroll the judgment? Because the payor spouse was a resident of Illinois? No, I believe that she didn't follow the correct format to do it. So I think that was the issue. But aren't we dealing really with at that point in time aren't we dealing with temporaries? I mean there was just what we used to call temporary support orders in Michigan, correct? Well, I think it was an interim amount and that the only thing pending at that time was Mark's petition to terminate child support. So I don't, it was an interim amount at that point but now we're talking about, now Tami has now transferred that to increasing the child support from that interim amount. And I think URIFSA does not even apply in these circumstances because for Illinois to use URIFSA you have to try to enforce an order. So if Mark wasn't paying the interim amount of child support pursuant to the 2012 Michigan order then URIFSA comes into play. But it doesn't. So we look to a modification of child support, which is what Tami filed for under section 510A of the Illinois Marriage and Dissolution of Marriage Act and according to that the court may make retroactive payments back to the date of notice. Mark received date of notice of the Will County petition in March 28, 2013 when she filed that motion to increase child support. She made no mention of the temporary order that she wanted it to go back to the 2012 Michigan order. In fact, she only said that I wanted to be retroactive to when I filed my motion to increase child support and that was the Colorado order. And for the reasons stated today, we'd ask that you affirm the trial court. Thank you. What was the trial judge's reasoning that he didn't retroactively apply to March? He did not believe that the matter was protracted in length and that he didn't believe that the litigation had gone on for a period of time and that Mark did anything to stall the litigation. So he, in his discretion, said that it should be going forward, not going backwards. Did he make that kind of finding? No, he's not required to make a finding. He just indicated that in his discretion that he did not believe that the  had gone   of time and that Mark did not make a decision for him on the motion to terminate child support filed on February 10, 2012 in the state of Michigan. The judge is referring everything back to that motion that was filed by Mark. So in fact, I don't know that that makes a difference when the original motion was on a motion to terminate child support and there had been, I believe, that Tammy had filed a response and perhaps additional pleadings in the Michigan case. So I don't know, maybe you can tell me, why you  know why the judge didn't consider that he's acting on the husband's motion to terminate, but nothing that the wife filed in Michigan. Well, I think the only thing that Tammy had filed in Michigan was a motion to rescind the order. So rescind the temporary order and that was the only  that the child support was filed in Will County. Then that became the issue of whether his support should increase. And the order that was entered in Michigan, that temporary order, says everything, all modifications to child support are retroactive to February 10, 2012 and lists what the judge is acting on. And I don't see how the Illinois, the Will County court can ignore that order. Because I think it's important to note that the retroactivity with respect to child support that the order is addressing is whether it goes retroactive with respect to his termination and the interim support. It had nothing to do with any increase in child support. It doesn't have to deal with any general modifications of child support. It was directly talking about the specific child support obligation. At that time, March child support obligation was $2,057 a month before the interim order was entered. I know you have said that a few different times, but the judge in Michigan says that the modifications are going to be retroactive. Ben says in item three, the father is going to pay this rate of $1,572 a month retroactive to February 10. And also allows responsibility for health care coverage. So I think it's all three things that are going to be retroactive because it's clear that he's giving orders for the referee to look at and orders for the individuals in the interim. You don't think that's the case? I don't because I  is a very specific child support amount at that time. Now if let's say hypothetically the Will County Court did terminate Mark's child support obligation, then I think because you're dealing with that petition to terminate the child support, that relates back to that petition. But the only petition that was pending, there was no petition at the time that that court order was entered with respect to increasing child support. So what was before the court was whether does child support stay the same or does it terminate? That was the only thing that was before the court. In the reference to the retroactivity in the Michigan order, it had to do with what the child support was lowered from, didn't it? Or am I The retroactivity dealt with whether to the, they put an interim order in which was a reduced amount of child support. So the retroactivity went back to that February 10th date. The original child support amount in Michigan. No, it went back to that when it said all modifications will be retroactive, it was talking about the specific amounts that they had indicated in their interim order. Yes, correct. Thank you very much. I would just like to clarify what I think are not accurate representations of the facts in Michigan. To be clear, and in the  the Michigan order, Mark's motion to terminate child support was denied April 11th, 2012. It was appended to the Michigan order, and so I don't know why Judge Garcia ruled on it, but it had been denied. That's in Michigan? Right. He hadn't refiled anything since then. Michigan has a system where the judge doesn't decide that he passes it off to the party referee who makes a recommendation as to amounts. I believe so. It sounds like it's an arbitration type system. That is either accepted in a final order by the judge or not. I believe so. Right. Unless they've given up all their power to the judge in Michigan. So they're just operating on temporaries, aren't they, in Michigan? And this order is specific. It calls it an interim order. Well, that's what we call temporaries. Right. I agree with you. I think they're synonyms. They mean the same thing. It's not a final order. It's explicit. So we've never had a final order out of Michigan? No. And the final order is entered. Right. So the only order that was pending was not the motion to rescind. It was my client's motion to basically enforce child support. Basically, arguably, to relate back on the temporaries in Michigan, right? Well, she filed it in the beginning. Mr. and his motion to terminate, she filed her motion to enforce the child support order. His motion was denied. But these are all temporary orders we're talking about. I want to rescind the temporary order. I want to modify the temporary order. Because that's all they have. Well, that's true. Okay. That's what we're working with. In Michigan, right. She wanted to go back to before he sought a reduction. I know, but what did these two people have? They have an original dissolution in Michigan, right? And then there was a modification after the dissolution, which is permanent, or as permanent as child support modifications can be. And then after Mr. Schley lost his job at that point, he filed a motion to terminate child support. Then there's a temporary order until a final number can be arrived at, which never happened because Michigan declined jurisdiction. And so to the issue of the notice, Mr. Schley has had notice since he filed his motion in February 2012 and since April 12th order that said the retroactivity is going to be back to this date. So the notice has been there all along. It's been two years that Mr. Schley has been trying to address this motion or address this issue of finalizing child support in three different states. So he's had notice. If we're looking at notice, which really again isn't modification under 510, but Mr. Schley has had notice and there are cases in which modification has been, well, I'll call it modification, but it's not really modification, but an award has been retroactive prior to a party filing a motion, which we cited in the context of contribution to college expenses. There are several cases cited in that regard, and I want to also point out in remarriage of Strur, which is the first district case where an ex-wife filed a petition to modify unallocated child support in June 2004. And while her case was pending, the ex-husband filed his motion to set child support because by that point in time, she was cohabitating and remarried, so the unallocated support had terminated. Ex-wife voluntarily dismissed her petition to modify unallocated support. So at that point in time, there was nothing pending on her end. Then in May 2007, she filed another motion to set child support. After they agreed on the support figure, they disagreed on the retroactivity, so she sought retroactivity back to the date that she filed her first motion in June 2004. Now, the trial court found that she could only have been filing her second petition by two years because the father knew that the support obligation was going to be modified. So that's another case, even outside the context of contribution to child college expenses, that courts have found awards to be appropriately modified prior to filing the instant petition, which, again, I'm just going to reiterate, isn't really the instant petition. The petition is Tammy's only pending petition in Michigan, which was ultimately decided by Judge Garcia, but in a different format, I suppose. Okay, now, back to the long issue of stopping this for child support purposes. I disagree with counsel. I don't think that Colangelo or Pratt specifically say cashed in. There is no language in there that distinguishes that these awards have been cashed in. The language talks about Pratt talks about vesting. Pratt is an interesting case cited by counsel because Pratt was actually a traditional IRA converted to a Roth IRA, and the court found that because it was a benefit, it was a taxable event, and even though the party didn't actually receive that money, it was just transferred into a Roth IRA, they had to pay taxes on it. Technically, it was actually a loss because of the taxes at that moment in time. Thank you very much. Thank you both very much for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible. And right now we'll take a brief recess for penalty.